**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | |
|---|---|
| IN RE: SQUIRE COURT PARTNERS LIMITED PARTNERSHIP | DEBTOR |
| SQUIRE COURT PARTNERS LIMITED PARTNERSHIP and NATIONAL COMMUNITY RENAISSANCE DEVELOPMENT CORPORATION | APPELLANTS/ CROSS-APPELLEES |
| v. No. 4:16CV00935 JLH | |
| CENTERLINE CREDIT ENHANCED PARTNERS LP SERIES J and CHARTERMAC CREDIT ENHANCED SLP LLC SERIES J | APPELLEES/ CROSS-APPELLANTS |
| WELLS FARGO BANK, N.A. | APPELLEE |

**OPINION AND ORDER**

Squire Court Partners Limited Partnership is an Arkansas limited partnership consisting of three partner-entities: Centerline Credit Enhanced Partners LP, Chartermac Credit Enhanced SLP LLC, and NHDC Texas Affordable Housing, Inc. Centerline is a limited partner, Chartermac is a special limited partner,[1] and NHDC Texas is the general partner of Squire Court. NHDC Texas, on behalf of Squire Court, petitioned for Chapter 11 bankruptcy in the bankruptcy court for the Eastern District of Arkansas. This was done without the consent of and against the wishes of the limited partners, who moved the bankruptcy court to dismiss the petition. After an evidentiary hearing, the bankruptcy court[2] granted that motion. NHDC Texas, acting on behalf of Squire Court, and National Community Renaissance Development Corporation, an affiliate of NHDC Texas, appealed. Centerline and Chartermac have cross-appealed. Wells Fargo Bank, N.A., the trustee with respect

---

[1] The Court will hereafter refer to Centerline and Chartermac simply as limited partners.

[2] The Honorable Richard D. Taylor, United States Bankruptcy Judge.

to revenue bonds issued by the Pulaski County Public Facilities Board secured by the assets of Squire Court, also is an appellee. This Court affirms.[3]

Squire Court was originally formed on June 27, 2005, for the purpose of acquiring, operating, and leasing a low-income apartment complex. It had a single general partner and a single limited partner. Squire Court planned to purchase real estate and construct and lease 155 apartment units that would make the partnership eligible for low-income housing tax credits. On October 1, 2006, Squire Court took on new partners, and its partnership agreement was amended to reflect the changes. The original general and limited partner both withdrew from Squire Court. Centerline, then known as RCC Credit Facility, L.L.C., became a limited partner, committing to contribute $1,392,000 in accordance with specified terms and conditions. In return, Centerline was given a 99.98% interest in Squire Court. Chartermac, then known as Related Direct SLP LLC, also became a limited partner and was given a .01% interest in Squire Court. NHDC Texas became Squire Court's sole general partner and was given a .01% interest in Squire Court.

Under the amended partnership agreement, NHDC Texas was given exclusive authority to manage and control Squire Court's business, assets, and affairs. The agreement, however, required unanimous consent of the partners before Squire Court could "file a petition seeking, or consent to, reorganization or relief under any applicable federal or state law relating to bankruptcy."

A "Development Deficit Guaranty Agreement" was also executed at this time. As its name suggests, the guaranty agreement obligated the guarantor to cover certain cost overruns. These costs included any "Development Deficit"—costs of acquiring and developing the apartment complex

---

[3] Centerline and Chartermac moved this Court to strike the appellants' briefs and dismiss their appeal. The stated reason for this heavy-handed request was that the appellants failed to properly cite to the record. This motion is DENIED.

2

(most notably a $3,400,000 mortgage) that exceeded cash flow and other revenue streams—and "all expenses of operating and maintaining the Improvements in excess of the Gross Collections to the extent necessary to maintain Break-Even Operations."[4] National Community Renaissance Development Corporation, then known as National Housing Development Corporation, is the guarantor under terms of the agreement. National Community Renaissance is an affiliate of NHDC Texas, and the guaranty agreement sets out that it stood to benefit from the acquisition by the limited partners of a partnership interest in Squire Court. The guaranty agreement also states that the guaranty induced the limited partners to acquire their interests in Squire Court.

In March 2016, NHDC Texas ceased making payments on Squire Court's mortgage. Wells Fargo Bank, N.A., the mortgage servicer, accelerated the maturity date of the mortgage. Although the terms of the guaranty agreement required National Community Renaissance to pay the accelerated amount, it refused. In June 2016, the limited partners filed suit in Arkansas state court against National Community Renaissance to enforce the terms of the guaranty agreement. While that action was ongoing, NHDC Texas filed a voluntary petition for bankruptcy on behalf of Squire Court on September 12, 2016. Before filing that petition, NHDC Texas sought consent from Centerline and Chartermac, but they declined to consent. NHDC Texas then filed the petition anyway. Centerline and Chartermac filed a motion seeking to dismiss the petition.

Centerline and Chartermac argued that the bankruptcy petition should be dismissed because (1) NHDC Texas lacked corporate authority to file it, (2) NHDC Texas filed it in bad faith, and (3) the bankruptcy court should abstain and dismiss the case under 11 U.S.C. § 305(a). They also

---

[4] The appellants say that break-even operations were expected within the first year or so but have yet to be achieved. As a result, National Community Renaissance says that it has contributed more than $2,400,000 under the terms of the guaranty agreement.

moved for sanctions based on their bad-faith-filing claim. The bankruptcy court held that NHDC Texas filed the petition without authority and granted the limited partners' motion to dismiss. The bankruptcy court found no evidence that NHDC Texas filed the petition in bad faith, and it rejected the limited partners' argument under 11 U.S.C. § 305(a). It therefore denied their motion for dismissal on those grounds as well as their motion for sanctions. NHDC Texas and guarantor National Community Renaissance appealed the dismissal. The limited partners cross appealed, arguing that the bankruptcy court erred in denying their motion as to bad faith, abstention under 11 U.S.C. § 305(a), and sanctions.

The appellants principally argue on appeal that the provision in the amended partnership agreement requiring unanimous consent of the members to file for bankruptcy is void as a matter of federal public policy. They contend that federal public policy provides that only a fiduciary may decide whether an entity will or will not seek relief under the bankruptcy code. They interpret the unanimous-consent provision as a "veto" held in the hands of self-interested parties who have no obligation to put the partnership's interests ahead of theirs.[5] They also argue that the limited partners are unable to act in the best interests of the partnership because they stand in conflict with partnership by way of their contribution obligations and by way of their decision to enforce the guaranty agreement rather than seek bankruptcy. The combination of conflicting interests and a lack of fiduciary duties, they say, frustrates the partnership's constitutional right to seek bankruptcy relief. The appellants alternatively request that the case be remanded for additional factual

---

[5] Under Arkansas's Uniform Limited Partnership Act, limited partners owe the partnership a duty of good faith and fair dealing, Ark. Code Ann. § 4-47-305(b), and the general partner owes the partnership duties of good faith and fair dealing, care, and loyalty (*i.e.*, fiduciary duties). Ark. Code Ann. § 4-47-408.

4

development.

The limited partners' arguments relating to their cross appeal address the bankruptcy court's denial of their arguments below. They continue to request sanctions against the appellants. The limited partners, as they did before the bankruptcy court, allege a collusive scheme between NHDC Texas and National Community Renaissance that they argue proves bad faith and entitles them to sanctions.

This Court sits as an appellate court when reviewing a bankruptcy court's judgment. *In re Falcon Prods., Inc.*, 497 F.3d 838, 841 (8th Cir. 2007). Legal questions are reviewed de novo, and factual findings are reviewed for clear error. *In re Vote*, 276 F.3d 1024, 1026 (8th Cir. 2002). Whether NHDC Texas had authority to file the bankruptcy petition is a legal question. *See Keenihan v. Heritage Press, Inc.*, 19 F.3d 1255, 1258 (8th Cir. 1994). "A person filing a voluntary bankruptcy petition on a corporation's behalf must be authorized to do so, and the authorization must derive from state law." *Id.* (citing *Price v. Gurney*, 324 U.S. 100, 106, 65 S. Ct. 513, 516, 89 L. Ed. 776 (1945)); *see also* Collier on Bankruptcy ¶ 2-301 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (explaining that"[n]either the Code nor the Federal Rules of Bankruptcy Procedure identify which party to a partnership may file a voluntary bankruptcy petition on behalf of a partnership," and so "applicable state law or the governing partnership documents determine who has the authority to file a partnership's voluntary bankruptcy petition"). The Supreme Court long ago instructed that if a court "finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition. It is not enough that those who seek to speak for the corporation may have the right to obtain that authority." *Gurney*, 324 U.S. at 106, 65 S. Ct. at 516.

5

In Arkansas, "the partnership agreement governs relations among the partners and between the partners and the partnership." Ark. Code Ann. § 4-47-110(a). The amended partnership agreement here requires all partners to consent to a voluntary bankruptcy petition. All partners did not consent. The appellants seek to invalidate the unanimous-consent clause on the grounds that it violates federal public policy. Unless the clause is invalidated, the bankruptcy petition was filed without authorization and must be dismissed.

The appellants rely on three cases in support of their proposition: *In re Lake Michigan Beach Pottawattamie Resort LLC*, 547 B.R. 899 (Bankr. N.D. Ill. 2016); *In re Intervention Energy Holdings, LLC*, 553 B.R. 258 (Bankr. D. Del. 2016); and *In re Bay Club Partners 472, LLC*, 2014 WL 1796688, at *1 (Bankr. D. Or. May 6, 2014). These cases all begin with the uncontested premise that entities, like individuals, cannot contract away access to bankruptcy relief. *See Continental Ins. Co. v. Thorpe Insulation Co.*, 671 F.3d 1011, 1026 (9th Cir. 2012) ("This prohibition of prepetition waiver has to be the law; otherwise, astute creditors would routinely require their debtors to waive." (quotation and citation omitted)); *In re Pease*, 195 B.R. 431, 434-35 (Bankr. D. Neb. 1996) ("[A]ny attempt by a creditor in a private pre-bankruptcy agreement to opt out of the collective consequences of a debtor's future bankruptcy filing is generally unenforceable. The Bankruptcy Code preempts the private right to contract around its essential provisions.").

In *Lake Michigan Beach*, the debtor defaulted on its debt to a creditor and agreed to give the creditor "special member" status if the creditor promised not to pursue remedies for the default. 547 B.R. at 903-04. The debtor amended its operating agreement to make the creditor a member of the debtor with the right to approve or disapprove of any "Material Action"—defined to include institution of bankruptcy proceedings—by the debtor. *Id.* As a special member, the creditor had

6

no interest in the profits or losses of the debtor, no right to distributions, no tax consequences, and was not required to make capital contributions to the debtor. *Id.* The creditor "was kept separate and apart from the Debtor in all ways but for its authority to block the Debtor from petitioning for bankruptcy relief." *Id.* In *Intervention Energy*, the debtor defaulted on its debt to a creditor and agreed to make the creditor a common member if the creditor agreed to waive all defaults. 553 B.R. at 261. The debtor amended its operating agreement to require unanimous consent from its members to file for bankruptcy. *Id.* The debtor issued 22,000,001 "Common Units" to interest holders. *Id.* at 260. The creditor held 1 Common Unit. *Id.* In *Bay Club*, the debtor received a loan from a creditor to purchase a large apartment complex. 2014 WL 1796688, at *1. The creditor requested that a bankruptcy waiver provision be added to the debtor's operating agreement along with its requests for other restrictive covenants. *Id*. at *3. The provision recited that the debtor "intends to borrow money with which to acquire the Property, and to pledge the Property and related assets as security therefor." *Id.* It went on to state that the debtor "shall not institute proceedings to be adjudicated bankrupt or insolvent" until "the indebtedness secured by that pledge is paid in full." *Id.*

As the court in *Intervention Energy* noted, the form that such a contractual waiver takes is limited only by the resourcefulness of attorneys. *See* 553 B.R. at 264. While each case involves a different contractual provision, in all of the cases the provision amounted to a debtor agreeing to a prepetition waiver. Moreover, each case involved a creditor limiting a debtor's right to seek bankruptcy relief as a condition of supplying credit. Each of these blocking provisions violated federal public policy.

None of these cases, however, stands for the more general proposition that a nonfiduciary

cannot have a controlling role in the decisionmaking process when an entity considers bankruptcy relief. The appellants support their argument with the court's description in *Lake Michigan Beach* of an acceptable "blocking director structure." There, the court said that "the director must be subject to normal director fiduciary duties and therefore in some circumstances vote in favor of a bankruptcy filing, even if it is not in the best interests of the creditor that they were chosen by." *In re Lake Michigan Beach*, 547 B.R. at 913. That statement applied in the context of an outside party—kept separate and apart from the entity seeking bankruptcy in all ways other than the authority to preclude that entity from filing a petition—attempting to control internal corporate matters. *See id*. at 904. As the court there recognized, allowing a creditor to contract for control of a debtor's decision whether to file a bankruptcy petition would undermine the most fundamental purposes of the bankruptcy laws. *Id*. at 914. The limited partners, however, are owners, not creditors of Squire Court.

The appellants have provided the Court with no case holding that a bona fide equity owner must hold a fiduciary position before it can vote on whether to file a bankruptcy petition. At oral argument, the appellants argued that their position is supported by decades of case law holding that authority to file for bankruptcy rests with a corporation's board of directors not the majority of shareholders. That example, though, undercuts their argument. A corporation typically delegates the board of directors authority to manage the business and affairs of the corporation. The authority does not originate with the board of directors but comes to it by corporate delegation, whether by default statutory provisions or corporate governance documents. Cases holding that the decision to file for bankruptcy rests with a corporation's board of directors focus on the delegation of authority, not the fact that the directors have fiduciary duties. *See, e.g., In re Arkco Properties, Inc.*, 207 B.R.

8

624, 628 (Bankr. E.D. Ark. 1997) (looking to state law and the corporation's by-laws to determine whether petitioner had authority to file for bankruptcy); *In re M & M Commercial Servs., Inc.*, 115 B.R. 212, 213 (Bankr. E.D. Mo. 1990) (holding that president acted beyond the scope of his authority when he filed the voluntary bankruptcy petition); *In re Giggles Rest., Inc.*, 103 B.R. 549, 553 (Bankr. D.N.J. 1989) (holding that "in the absence of restrictions, the power to file a voluntary petition in bankruptcy on behalf of a corporation rests with the Board of Directors"); *In re Al-Wyn Food Distributors, Inc.*, 8 B.R. 42, 43 (Bankr. M.D. Fla. 1980) (holding that president acted outside of his authority in filing bankruptcy petition where neither governing instruments of the corporation nor state law authorized the president to file a petition). In other words, a board of directors has authority to decide whether the entity will file for bankruptcy because that authority is delegated to the board. *See Boyce v. Chem. Plastics*, 175 F.2d 839, 843 (8th Cir. 1949) (analyzing "whether the board of directors of a Minnesota corporation organized under Minnesota law would have authority in the first instance to file a petition in voluntary bankruptcy" and holding that Minnesota law controlled the determination).

Just as the authority of a board of directors is delegated, likewise a general partner has authority delegated to it to act on behalf of the partnership. Sometimes that authority may include the power to file for bankruptcy.[6] Here, however, Squire Court did not delegate to NHDC Texas the

---

[6] The default rule under Arkansas's Uniform Limited Partnership Act differs from Arkansas's Business Corporation Act of 1987, which states that "[a]ll corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, its board of directors," subject only to limitations "in the articles of incorporation." Ark. Code Ann. § 4-27-801(b). The Uniform Limited Partnership Act permits partnerships to give general partners many powers, but it requires consent from each partner to:

> sell, lease, exchange, or otherwise dispose of all, or substantially all, of the limited partnership's property, with or without the good will, other than in the usual and

9

power to file for bankruptcy on its own initiative. Instead, the partners retained for themselves, acting by unanimous consent, the decision whether to file a bankruptcy petition.

It is one thing to look past corporate governance documents and the structure of a corporation when a creditor has negotiated authority to veto a debtor's decision to file a bankruptcy petition; it is quite another to ignore those documents when the owners retain for themselves the decision whether to file bankruptcy. It is one thing for the courts to overrule a creditor that seeks to block a debtor from filing bankruptcy; it is quite another for the courts to overrule the owners of the entity.

The appellants alternatively seek remand to the bankruptcy court to determine whether the unanimous-consent provision was added after the inception of Squire Court, whether the limited partners acted as fiduciaries in withholding their consent, and whether National Community Renaissance was in fiscal distress. The bankruptcy court held an evidentiary hearing and placed no restriction on the parties' ability to introduce evidence. No reason exists to remand for another evidentiary hearing.

The limited partners' cross appeal regarding 11 U.S.C. § 305(a) need not be reached because

---

regular course of the limited partnership's activities.

Ark. Code Ann. § 4-47-406(b)(3). Courts and commentators have applied similar statutory provisions to voluntary bankruptcy filings. *See, e.g.*, *In re Loverin Ranch*, 492 B.R. 545, 550 (Bankr. D. Or. 2013) (interpreting Oregon partnership law to require consent of all partners to file for voluntary bankruptcy); *In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 827 (Bankr. N.D. Tex. 2006) (interpreting Washington law to require unanimous consent of LLC members to file for voluntary bankruptcy); *In re SWG Assocs.*, 199 B.R. 557, 560 (Bankr. W.D. Pa. 1996) (noting that under Pennsylvania law "commencement of a bankruptcy case can appropriately be viewed statutorily as an act generally requiring unanimous consent of partners"); Alan R. Bromberg, *Crane and Bromberg on Partnership*, § 91B(d) n.66 (1968) (noting that the Uniform Partnership Act "denies a partner's authority (without unanimous consent) to any act which will make it impossible to carry on the business. This probably covers a bankruptcy admission and consent [under the old Bankruptcy Act].").

the Court affirms the bankruptcy court's dismissal of the petition. Their arguments relating to bad faith and sanctions have a steep hill to climb. They argue that NHDC Texas colluded with National Community Renaissance and filed the petition to obstruct the state court proceeding between the limited partners and National Community Renaissance. This collusion, they argue, warrants sanctions. Whether a bankruptcy petition has been filed in bad faith is a question of fact. *In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 379 (8th Cir. 2000). A bankruptcy court's decision to impose or not impose sanctions is reviewed for an abuse of discretion. *In re Kujawa*, 270 F.3d 578, 581 (8th Cir. 2001). The bankruptcy court found that there were valid reasons to pursue bankruptcy and found no evidence of bad faith.

The limited partners take another angle. The Eighth Circuit has held that a dismissal under 11 U.S.C. § 1112(b) for "cause" can include a bad-faith filing. *Cedar Shore*, 235 F.3d at 379. The limited partners argue that filing a petition without authority qualifies as a bad-faith filing that can be dismissed for cause under section 1112(b). The bankruptcy court considered this point as well but distinguished the type of bad faith required for sanctions and the bad faith that might attach to an unauthorized filing. The limited partners' argument, though, overlooks the fact that authority to file is treated by the Eighth Circuit as a jurisdictional issue, not under section 1112(b)'s cause-dismissal. *See Keenihan v. Heritage Press, Inc.*, 19 F.3d 1255, 1259 (8th Cir. 1994). As a jurisdictional issue, once the bankruptcy court finds authority lacking, it must dismiss. *Gurney*, 324 U.S. at 106, 65 S. Ct. at 516. Section 1112(b) assumes the bankruptcy court has jurisdiction but recognizes other reasons justifying dismissal, which is not the situation here.

The bankruptcy court's factual findings are not clearly erroneous, and it did not abuse its discretion in denying the limited partners' motion for sanctions.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's decision is AFFIRMED.

IT IS SO ORDERED this 7th day of July, 2017.

*J. Leon Holmes*
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE